# **<u>EXHIBIT E</u>**

# King & Spalding

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Tel: +1 213 443 4335
Fax: +1 213 443 4310
www.kslaw.com

Craig Bessenger
Partner
Direct Dial: +1 213 218 4004
Direct Fax: +1 213 443 4310
cbessenger@kslaw.com

**VIA EMAIL AND**
**FIRST-CLASS MAIL**

December 9, 2020

Full Circle Villagebrook GP, LLC
c/o Full Circle Communities, Inc.
Attn: Joshua Wilmoth
310 South Peoria Street, Suite 500
Chicago, IL 60607
jwilmoth@fccommunities.org

Re: *Villagebrook Apartments Limited Partnership (the "Partnership") – Exercise of Section 7.4.J Purchase Option*

Dear Mr. Wilmoth:

I am writing on behalf of my firm's client, Alden Torch Financial ("Alden Torch"), which is the authorized representative of AMTAX Holdings 436, LLC ("AMTAX") and Protech 2004-D, LLC ("Protech"). As you know, AMTAX and Protech are, respectively, the Investor Limited Partner and the Special Limited Partner of the Partnership referenced above (collectively, the "Limited Partners"). The Partnership is governed by a Second Amended and Restated Agreement of Limited Partnership dated as of May 1, 2005, as amended (the "Partnership Agreement"). Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Partnership Agreement.

Alden Torch is in receipt of your November 4, 2020 letter on behalf of Full Circle Villagebrook GP, LLC (the "General Partner"), which purports to provide the Limited Partners with notice of the General Partner's exercise of the purchase option described in Section 7.4.J of the Partnership Agreement. The General Partner claims in the letter that the "purchase price of the

Joshua Wilmoth
December 9, 2020
Page 2

Option . . . shall be the amount of sale proceeds which the Limited Partners would receive, in accordance with the terms of the Partnership Agreement, if the Partnership's property . . . were sold at fair market value, subject to an assumed 4% brokerage fee among other things. Section 6.2.B governs the distributions of proceeds from a sale of the Apartment Complex."

According to the General Partner, it selected Newmark Knight Frank (the "Appraiser") to perform an appraisal of the Partnership's property (the "Apartment Complex"). The Appraiser subsequently arrived at a fair market value of the Apartment Complex of only $14,100,000. The Limited Partners reject the Appraiser's valuation of the Apartment Complex and, more importantly, the Appraiser's subsequent conclusions, and further reject the General Partner's contention that the Appraiser's determinations are "binding" under the Partnership Agreement.

The Appraiser's valuation of the Apartment Complex appears to be far below the actual fair market value. As you know, the Limited Partners recently engaged CBRE to provide a broker's opinion of value for the Apartment Complex, and CBRE determined a value range of $16,000,000 to $17,400,000. The Appraiser's valuation of only $14,100,000 is nearly 20% lower than even the midpoint of CBRE's value range for the Apartment Complex. This is not a reasonable variance, and strongly suggests that the Appraiser's work reflects—at best—an inaccurate conclusion.

Based on this erroneous valuation of the Apartment Complex, the Appraiser then purportedly concluded that the purchase price of the Limited Partners' interests in the Partnership is only $494,594. In order to reach this artificially reduced purchase price, the Appraiser ignores the plain meaning of the phrase "in accordance with the terms of the Partnership Agreement" in Section 7.4.J of the Partnership Agreement, including that a sale of the Apartment Complex is a dissolution event pursuant to Section 2.5.A(i), which necessarily triggers the liquidation provisions in Section 6.3. The Appraiser has no authority to ignore terms of the Partnership Agreement, and cannot arbitrarily apply certain provisions and not others to the detriment of the Limited Partners. The Appraiser must determine the net proceeds that are to be distributed to the Partners (i.e., gross proceeds less a 4% brokerage fee and appropriate prorations and costs, leaving the available proceeds to distribute), and any subsequent distribution shall be determined solely by the terms of the Partnership Agreement, which is clear on its face.

Specifically, Section 6.2.B explicitly states that it is "subject to the provisions of Section 6.3[,]" which confirms that if there is a difference between the percentage of residual sale proceeds that the Limited Partners would be entitled to receive under Section 6.3 as compared with Section 6.2.B—as is the case here—then Section 6.3 controls. Section 6.3, in turn, requires that residual sale proceeds from a Terminating Capital Transaction must be distributed pro rata based on the partners' respective positive Capital Account balances, after taking into account all Capital Account adjustments for the year. Accordingly, even assuming the validity of the Appraiser's valuation of the Apartment Complex at only $14,100,000, the purchase price of the Investor Limited Partner's interest correctly calculated pursuant to Section 7.4.J would be

Joshua Wilmoth
December 9, 2020
Page 3

approximately $2,915,746, which amount is subject to change based on the Partnership's activity for the 2020 tax year. (*See* Exhibit A, enclosed herewith.)

Despite the deficiencies outlined above, the Limited Partners assume and confirm that the Option was triggered and are prepared to accept the Appraiser's valuation of the Apartment Complex at $14,100,000, but only if the resulting proceeds are correctly applied in accordance with the Partnership Agreement (i.e., in conformity with Section 6.2.B and Section 6.3, resulting in proceeds to the Limited Partners equal to their then positive Capital Account balances, estimated to be $2,915,746). If you have any objection to consummating the transaction under this correctly calculated amount, please notify Alden Torch by no later than December 14, 2020. Absent any objection, Alden Torch expects to close on the terms communicated in this letter on or before December 31, 2020.

This letter is not, and is not intended to be, a summary of the Limited Partners' rights, claims, objections, defenses, and remedies under the Partnership Agreement and the related transaction documents, all of which are expressly preserved.

Yours very truly,

*Craig H. Bessenger*

CRAIG H. BESSENGER


Encl.

EXHIBIT A

**Villagebrook**
**11010**

|  | 0.0100% | 89.9800% | 0.0100% | 10.0000% | 100.0000% |
|---|---|---|---|---|---|
|  | **Full Circle Villagebrook GP** <u>**GP**</u> | **Full Circle Holding** <u>**OLP**</u> | **Protech 2004-D** <u>**SLP**</u> | **AMTAX Holdings 436** <u>**ILP**</u> | <u>**Totals**</u> |
| Capital as of 12/31/2019 | (75) | - | - | 3,213,648 | 3,213,573 |
| 2020 Income/(Loss) | (3) | - | - | (297,902) | (297,905) |
| 2020 Distributions | - | - | - | - | - |
| Capital as of 12/31/20 | (78) | - | - | 2,915,746 | 2,915,668 |
| Allocation of Gain on Sale |  |  |  |  |  |
| First - to eliminate negatives | 78 | - | - | - | 78 |
| Second - Exit Tax Distribution | - | - | - | - | - |
| Third - back end splits | 288 | 2,590,897 | 288 | - | 2,591,473 |
| Ending Capital Accounts | 288 | 2,590,897 | 288 | 2,915,746 | 5,507,219 |
| Distribution Upon Sale (Section 6.3B) | (288) | (2,590,897) | (288) | (2,915,746) | (5,507,219) |
| Check | - | - | - | - | - |

EXHIBIT A

**Villagebrook**
**11010**

| | | |
|---|---:|---|
| Building Basis | 16,617,219 | |
| Accumulated Depreciation | (7,324,668) | |
| Land | 1,300,000 | |
| | | |
| Net basis of Building/Land | 10,592,551 | |
| Add Other Assets Sold | 281,398 | |
| Building/Land Basis | 10,873,949 | |
| | | |
| Sales Price | 14,100,000 | |
| Less: Closing Costs | (634,500) | |
| Amount Realized | 13,465,500 | |
| Building/Land Basis | (10,873,949) | |
| GAIN/(Loss) on Sale | 2,591,551 | |
| | | |
| Cash Proceeds | 14,100,000 | |
| Less Commissions | (634,500) | |
| Release of Cash & Escrows | 807,205 | |
| Cash from Sale | 14,272,705 | |
| | | |
| Cash Available for Distribution Under Sec. 6.2B | 14,272,705 | |
| | | |
| Distributions in Accordance with Sec. 6.2(B)(ii)(1) | (8,240,486) | All debt & est reserves |
| Distributions in Accordance with Sec. 6.2(B)(ii)(2) | 0 | AMF |
| Distributions in Accordance with Sec. 6.2(B)(ii)(3) | (525,000) | GP Loans |
| Distributions in Accordance with Sec. 6.2(B)(ii)(4) | 0 | Exit Tax Distribution |
| | | |
| **Remaining Cash** | **5,507,219** | |

| | | | |
|---|---:|---:|---|
| Distributions in Accordance with Sec. 6.2(B)(ii)(5) | (551) | 0.0100% | GP |
| | (4,955,396) | 89.9800% | OLP |
| | (551) | 0.0100% | SLP |
| | (550,722) | 10.0000% | ILP |
| | (5,507,220) | 100.0000% | |
| | | | |
| Distributions in accordance with Section 6.3B | | | |
| | (288) | 0.0052% | GP |
| | (2,590,897) | 47.0455% | OLP |
| | (288) | 0.0052% | SLP |
| | (2,915,746) | 52.9441% | ILP |
| | (5,507,219) | 100.0000% | |

| | |
|---|---:|
| Total to ILP | (2,915,746) |